

HUNTON ANDREWS KURTH LLP
200 PARK AVENUE
NEW YORK, NY 10166-0005

TEL   212 • 309 • 1000
FAX   212 • 309 • 1100

ARMIN GHIAM
DIRECT DIAL: 212 • 908 • 6207
EMAIL: aghiam@HuntonAK.com

November 13, 2023

FILE NO: 126908.0000001

**Via ECF**

Magistrate Judge Scott T. Varholak
Alfred A. Arraj United States Courthouse
901 19th Street, Courtroom A-402
Denver, Colorado 80294

> **Re:**   *Shenzhen Keenray Innovations Limited v. Global Proton LLC*,
> <u>No. 1:23-cv-01855 (D. Colo. Jul 20, 2023)</u>

Dear Judge Varholak:

We represent defendant Global Proton LLC ("Defendant") in the above matter. This correspondence is submitted by Proton and Plaintiff Shenzhen Keenray Innovations Limited ("Plaintiff"). In view of the recent developments before the United States Patent and Trademark Office ("USPTO"), Defendant respectfully withdraws its Motion for Preliminary Injunction ("Motion") and requests stay of the case pending the resolution of the proceeding before the USPTO. Plaintiff does not oppose the withdrawal of the Motion, but opposes the request for stay.

On Friday, November 10, 2023, counsel for Defendant became aware that the USPTO has ordered an *ex parte* reexamination of U.S. Patent No. 8,481,895 (hereinafter "reexamination"), the only patent-at-issue in this case. *See* **Exhibit A**. The Order states that "substantial new question(s) of patentability affecting claims of the subject patent are raised by the Request" for reexamination. *Id*. While Defendant disagrees with this determination and plans on contesting the proceeding, to avoid imposing unnecessary litigation expenses on the parties and advance judicial economy, Defendant has decided to withdraw its Motion. This request is not opposed by counsel for Plaintiff.

Defendant also seeks stay of the case pending the outcome of the reexamination. In the context of *ex parte* reexaminations, a stay is appropriate when there is a significant likelihood that the outcome of the reexamination proceeding will streamline the scope of this case to an appreciable extent if not dispose of it entirely. *Cellect LLC v. Samsung Elecs. Co.*, No. 19-CV-00438-CMA-MEH, 2020 WL 3425166, at *5 (D. Colo. June 23, 2020). Where the USPTO has granted reexamination as to all asserted claims of the patent, the courts routinely stay cases.

*See, e.g.*, *AGIS Software Development LLC v. Google LLC*, 2021 WL 465424, *2–*3 (E.D. Tex. 2021) ("where the PTAB has instituted IPR proceedings or the PTO has granted EPR's as to all claims of all asserted patents, this Court has likewise routinely stayed cases because the Court there does not retain before it any intact (as originally asserted) claims that are ready to move forward toward trial"); *Core Laboratories, LP v. Spectrum Tracer Services, L.L.C.*, 2013 WL 501347 (W.D. Okla. 2013) ("courts routinely issue stays pending the outcome of reexamination proceedings"); *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, F.R.D., 2011 WL 3796182, *3 (W.D.N.Y.) ("Courts 'routinely' issue stays pending the outcome of reexamination proceedings, particularly in cases where the litigants have not made substantial progress towards trial"). This is because the claims may potentially be modified, dropped, or canceled in the USPTO proceedings, and it would be wasteful for the parties to litigate patent claims that may ultimately change in scope. *EdiSync Systems, Inc. v. Centra Software, Inc.*, 2009 WL 3698520, *2–*3 (D. Colo. 2009) ("If the second reexamination resulted in clarification of the new '320 Patent claims, this action would control the outcome of any subsequent infringement analysis and may render moot the question of pre-reexamination certificate liability.").

Here, ***the only claim asserted by Defendant in this case*** is now subject to a granted reexamination petition. *See* Exhibit A. The reexamination petition was ***not*** requested by Defendant or its attorney. *See* Exhibit B. During the proceeding, USPTO will decide whether the claims of the patent, including the only claim asserted in this case, is invalid in view of the prior art identified by the petition. In response, Defendant may narrow, cancel, or submit new claims. As such, there is a high likelihood that the claims are going to be modified in some material way in response to a potential rejection by the USPTO. Therefore, if this case were to proceed to trial on the current claims, as is, there is a serious risk of wasted resources as between both the parties and the Court. *Edisync Systems, Inc. v. Centra Software Inc.*, 2013 WL 1461484, *2-*3 (D. Colo. 2013) ("I find that it would clearly simplify the issues and streamline the case for me wait for the Patent Office's final action before repeating its analysis."). Defendant respectfully requests stay of the case to avoid unnecessary litigation between the parties until the scope of the claims of the asserted patent is clarified.

Counsel for Defendant had two telephone conferences with counsel for Plaintiff on November 12, 2023. The parties have also exchanged several emails relating to the requested stay. Counsel for Plaintiff indicated that his client opposes the requested stay. It is believed that counsel's response will be forthcoming.

We thank you in advance for your time and consideration.

Sincerely,

/s/ *Armin Ghiam*

cc:      All Counsel of Record

# Exhibit A



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address:  COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,271 | 10/06/2023 | 8481895 | 27-014 | 4491 |

27885          7590          11/08/2023
FAY SHARPE LLP
1228 Euclid Avenue, 5th Floor
The Halle Building
Cleveland, OH 44115

| EXAMINER |
|---|
| CLARKE, SARA SACHIE |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/08/2023 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

 **UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Culpepper IP, LLLC
75-170 Hualalai Road
Suite B204
Kailua-Kona, HI 96740

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,271* .

PATENT UNDER REEXAMINATION *8481895* .

ART UNIT *3993* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting Request For Ex Parte Reexamination* | Control No. 90/019,271 | Patent Under Reexamination 8481895 | |
|---|---|---|---|
| | Examiner SARA CLARKE | Art Unit 3993 | AIA (FITF) Status No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>10/06/2023</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:   a)☐   PTO-892,      b)☑   PTO/SB/08,      c)☐   Other: _____

1. ☑   The request for *ex parte* reexamination is GRANTED.

     RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| | | |
|---|---|---|
| | | |

cc:Requester ( if third party requester )

Application/Control Number: 90/019,271  Page 2
Art Unit: 3993

## EX PARTE REEXAMINATION ORDER

The present application is being examined under the pre-AIA first to invent provisions.

*1.*      Reexamination of claims 1, 2, 21, and 43 of US Patent No. 8,481,895 (" **'895 Patent**")
was requested. See the Request for Ex Parte Reexamination ("**Request**"). As discussed below,
substantial new question(s) of patentability ("SNQ(s)") affecting claims of the subject patent are
raised by the Request. Accordingly, the request for reexamination of the subject patent is
GRANTED.

### *Patent Application History*

*2.*      The '895 Patent issued from application 11/410764,634, which was filed 04/25/2006 and
was issued 07/09/2013. A petition to accept the unintentionally delayed payment of the 7.5 years
maintenance fee was granted 06/08/2023.

*3.*      In the 04/02/2008 Office Action, the prior examiner made the following prior art
rejections:

| Claim(s) | Prior Art Applied |
|---|---|
| 45, 46, 48–51, 56, 60, 62, and 64 | US Patent No. 5,231,266 to Warren |
| 47 | Warren in view of US Patent No. 4,694,146 to DeMars and WO Pub. No. 03/053101 to Ferguson |
| 52, 54, 57, 61 and 64 | Warren in view of US Patent No. 4,927,995 to Lovett |
| 53 and 54 | Warren in view of US Patent No. 4,644,136 to Watchman |
| 52 and 55 | Warren in view of US Patent No. 5,569,403 to Swanson |
| 58 | Warren in view of US Patent No. 4,117,309 to Cayley |
| 59 | Warren in view of US Patent No. 7,191,546 to Maruca |
| 63 | Warren in view of US Patent No. 4,918,290 to DeMars |
| 65, 68–70, 72, 73, 76–79, and 81–84 | Warren in view of Lovett and Cayley |
| 66 and 71 | Warren in view of Lovett, Cayley, Ferguson, and US Patent No. 4,794,228 to Braun |
| 67 | Warren in view of Lovett, Cayley, and DeMars '146 |
| 74 | Warren in view of Lovett, Cayley, and Watchman |
| 80 | Warren in view of Lovett, Cayley, and DeMars '290 |

*4.*      In response to this office action, the Applicant submitted an Amendment on 06/27/2008.

*5.*      The prior examiner issued a Final Rejection on 10/16/2008 Office Action, in which he
made the following prior art rejections, in addition to the rejections made above:

Application/Control Number: 90/019,271                                      Page 3
Art Unit: 3993

| Claim(s) | Prior Art Applied |
|---|---|
| 65, 68–70, 72, 73, 76–79, and 81–86 | Warren in view of Lovett, Cayley, Maruca, and US Patent No. 3,626,152 to Governale |
| 87 | Warren in view of Lovett, Cayley, Maruca, Governale, and US Patent No. 4,694,973 to Rose |
| 88–98 | Warren in view of Lovett, Cayley, Maruca, Governale, Ferguson, and Braun |

*6.*    Following the submission of an Appeal Brief on 12/10/2008, the prior examiner issued a second Final Rejection on 03/19/2009. In addition to the rejections made above, the prior examiner made the following prior art rejections:

| Claim(s) | Prior Art Applied |
|---|---|
| 65, 68–70, 72, 73, 76–79, and 81–86 | Warren in view of Lovett, Cayley, Maruca, and US Patent No. 3,626,152 to Governale |
| 66 and 71 | Warren in view of Lovett, Cayley, Maruca, Governale, Ferguson, and Braun |
| 67 | Warren in view of Lovett, Cayley, Maruca, Governale, and DeMars '146 |
| 74 | Warren in view of Lovett, Cayley, Maruca, Governale, and Watchman |
| 75 | Warren in view of Lovett, Cayley, Maruca, Governale, and Swanson |
| 80 | Warren in view of Lovett, Cayley, Maruca, Governale, and DeMars '290 |
| 87 | Warren in view of Lovett, Cayley, Maruca, Governale, and Rose |
| 88–95 | Warren in view of Lovett, Cayley, Maruca, Governale, Rose, Ferguson, and Braun |

*7.*    The Applicant submitted a second Appeal Brief on 11/24/2009.

*8.*    In the 02/28/2013 Board Decision, the Board reversed the prior art rejections. With respect to claims 45–86 (now claims 1–42), the Board stated, "Warren fails to disclose that its towelette warmer satisfies the claim limitation of '**said warming cavity having a volume to hold at least one standard bath towel**' " (**"standard bath towel limitation"**), where "a standard bath towel is defined as having an average volume of about 175-450 cubic inches." (emphasis added) See the Decision, pp. 7–10.

*9.*    With respect to claims 87–95, (now claims 43–51), the Board found that Warren's two lids do not read on a "**single lid**" (**"single lid limitation"**), where the term "single" was

Application/Control Number: 90/019,271                                    Page 4
Art Unit: 3993

construed to recite "one and only one lid." (emphasis added) See the Decision, pp. 7–10. The
current examiner notes that independent claim 65 (now claim 21), which was also rejected in
view of Warren, also recites a "single lid."

*10.*      Following the Board Decision, the Applicant amended claims 45, 48, 50, 52, 53, 64, 65,
72, 73, 81, 83, 86, and 89 to address an indefiniteness rejection, which was upheld by the Board.
In the Notice of Allowability issued on 05/10/2013, a second prior examiner referred to the
Board decision in his statement of reasons for allowance.

### US Patent Pub. No. 2002/0133969 to Casella

*11.*      In items 9, 14, 19, and 26 of the Request, the Requester suggests that Casella raises a
SNQ with respect to claims 1, 2, 21, and 43.

*12.*      Casella was not previously considered/addressed in the prior examination of the patent
application or a final holding of validity by the Federal Courts.

### **Standard bath towel limitation**

*13.*      In items 31, 44, and 55 of the Request, with respect to claims 1, 2, 21, and 43, the
Requester asserts: "Casella discloses a cavity where a textile material is dry heated in a cavity 20
large enough to hold an article of clothing 26 which is larger than a standard towel."

*14.*      In items 31, 44, and 55, the Requester refers to the following teachings from Casella:

> [0014] The working model size includes a housing that is dimensioned to be **sixty
> inches tall, twenty-four inches wide and eleven inches deep**. However, larger
> and smaller models based on the same process and design as the preferred
> embodiment have been tested and are likewise effective at solving the above
> mentioned problems inherent in the prior art. (emphasis added by the examiner)

> [0019] The lower compartment is of a generally larger size than the upper
> compartment and is dimensioned to accept an article of clothing.

> [0039] The lower compartment 20 is of a generally larger size than the upper
> compartment 22 and is dimensioned to accept the article of clothing 26. As shown
> in FIG. 1, the article of clothing 26 is a shirt. However, it is recognized that the
> housing may be adapted to dry and de-wrinkle other articles of clothing, or **non-
> clothing items, such as towels, sheets, blankets, or the like**.
> (emphasis added by the examiner)

*15.*      As noted by the Requester in item 25 of the Request, the specification of the '895 Patent
defines the term "standard bath towel." See the '895 Patent, col. 2, ll. 36–39, which states:
"As defined herein, a standard bath towel is about 27-30" by 52-60" and has a thickness of about
0.125-0.25", thus having an average volume of about 175-450 cubic inches."

Application/Control Number: 90/019,271                                           Page 5
Art Unit: 3993

*16.*     The dimensions discussed in ¶0014 above are the outer dimensions of the housing 12.
Casella does not provide an express description of the dimensions of the lower, drying
compartment 20.

~~*17.*~~     In ¶0039, Casella states that the lower compartment 20 can accept an article of clothing
and "non-clothing items, such as towels, sheets, blankets, or the like." Based on the description
of "towels, sheets, [and] blankets," it appears that the lower compartment 20 can accept at least a
towel.

*18.*     As discussed above, the Board reversed the prior examiner's rejection of claims 45–86
because the Warren reference does not disclose "said warming cavity having a volume to hold at
least one standard bath towel." The reference considered by the Board, Warren, discloses the use
of its warmer with towelettes. In contrast, Casella discloses that its warming compartment can
accept a towel. For this reason, Casella presents a new, non-cumulative technological teaching
that was not previously considered and discussed on the record during the prosecution of the
application which resulted in the subject patent such that a reasonable examiner would consider
the teachings of Casella important in deciding whether or not claims 1, 2, 21, and 43 are
patentable.

**Single lid limitation**

*19.*     In items 44 and 55 of the Request, with respect to claims 21 and 43, the Requester
suggests that Casella teaches "a single lid (door) 86 dimensioned to seal the lower compartment
20 where clothing is so that air does not escape is mounted on front of the housing 12 and swings
open on a hinge 88."

*20.*     In items 44 and 55, the Requester also refers to the following teaching from Casella:

     [0051] Referring again to FIG. 4, a door 86 is preferably mounted on the front of
     the housing 12 and swings open on a hinge 88.

Application/Control Number: 90/019,271                                    Page 6
Art Unit: 3993

## FIG. 4



**21.**      Referring to Fig. 4 and its description, it appears that Casella teaches the use of a single door for closing the front of housing 12.

**22.**      As discussed above, the Board reversed the prior examiner's rejection of claims 87–95 because the Warren reference does not disclose "a single lid," where the term "single" was construed to recite "one and only one lid." It appears that Casella teaches the use of a single door. Thus, with respect to the single lid limitation, Casella presents a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application which resulted in the subject patent such that a reasonable examiner would consider the teachings of Casella important in deciding whether or not claims 21 and 43 are patentable.

**23.**      Accordingly, **Casella raises a SNQ with respect to claims 1, 2, 21 and 43**.

### US Patent No. 5,815,961 to Estes

**24.**      In items 10, 15, 20, and 26 of the Request, the Requester suggests that Casella raises a SNQ with respect to claims 1, 2, 21, and 43.

**25.**      Estes was not previously considered/addressed in the prior examination of the patent application or a final holding of validity by the Federal Courts.

Application/Control Number: 90/019,271                                    Page 7
Art Unit: 3993

**Standard bath towel limitation**

*26.*     In items 33, 46, and 57 of the Request, with respect to claims 1, 2, 21, and 43, the

Requester suggests that Estes teaches "a clothes treating apparatus that include a cavity (cabinet)

12 large enough to hold a hanging assembly 26 where a textile material is dry heated. See Col. 3,

lines 28-30 and 39. The hanging assembly 26 is designed to support a shirt-like clothing (col. 5,

lines 7-8), which is larger than a standard towel."

*27.*     In items 33, 46, and 57, the Requester refers to the following teachings from Estes:

>     The cabinet 12 forms an interior region 14 … . (Col. 3, ll. 18 and 19)

>     The cabinet 12 includes an upper housing 18. The upper housing 18 supports a
>     blower assembly 20 which is connected to an air supply duct 22. (Col. 3, ll. 28–30)

>     An inflatable hanger assembly 26 including a rigid hanger body 28 and an inflatable
>     bag 30 is supported within the cabinet interior region 14. (Col. 3, ll. 38 and 39)

>     The inflatable hanger assembly 26 is designed to support a **shirt-like clothes item**
>     within the interior region 14 similar to a conventional hanger. (Col. 5, ll. 7–9)
>     (emphasis added by the examiner)

*28.*     The examiner notes that Estes discloses that the interior region 14 can accept a "shirt-like

clothes item."

*29.*     In contrast with the device of Warren, which device accepts towelettes in its warming

cavity (vessel 11), Estes discloses that its warming compartment can accept a towel. For this

reason, Estes presents a new, non-cumulative technological teaching that was not previously

considered and discussed on the record during the prosecution of the application which resulted

in the subject patent such that a reasonable examiner would consider the teachings of Estes

important in deciding whether or not claims 1, 2, 21, and 43 are patentable.

**Single lid limitation**

*30.*     In items 46 and 57 of the Request, with respect to claims 21 and 43, the Requester

suggests that Estes teaches "a clothes treating apparatus that include a single lid (door) 16 is

hingedly connected to the cabinet 12 for closing the anterior region 14 where a textile material is

dry heated in the cabinet large enough to hold a hanging assembly 26. See Col. 3, lines 18-20,

28-30 and 39. The door 16 seals the interface with the cabinet 12."

*31.*     In items 46 and 57, the Requester also refers to the following teaching from Estes:

Application/Control Number: 90/019,271                                    Page 8
Art Unit: 3993

> A door 16 is hingedly connected to the cabinet 12 for closing the enclosure 14
> formed by the cabinet 12. (Col. 3, ll. 22–23)



FIG. 1

*32.*     Referring to Fig. 1 and its description, it appears that Estes teaches the use of a single door 16 for closing the front of cabinet 12.

*33.*     It appears that Estes teaches the use of a single door. Thus, with respect to the single lid limitation, Estes presents a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application which resulted in the subject patent such that a reasonable examiner would consider the teachings of Estes important in deciding whether or not claims 21 and 43 are patentable.

*34.*     Accordingly, **Estes raises a SNQ with respect to claims 1, 2, 21, and 43**.

### US Patent No. 5,606,640 to Murphy ("Murphy '640")

*35.*     In items 11, 16, 21, and 28 of the Request, the Requester suggests that Murphy '640 raises a SNQ with respect to claims 1, 2, 21, and 43.

*36.*     Murphy '640 was previously cited during the earlier concluded examination of the application that issued as the subject patent. See the Information Disclosure Statement submitted

04/25/2006 and attached to the 04/02/2008 Office Action. Thus, Murphy '640 is considered to be "old art."

*37.*     On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a):

> The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office.

> For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a SNQ that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis.

*38.*     During the previously concluded examination, the prior examiner did not address Murphy '640 with respect to the claims. Thus, if Murphy '640 teaches any new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application that resulted in the subject patent, then Murphy '640 may raise a SNQ.

**Standard bath towel limitation**

*39.*     In items 35, 48, and 59 of the Request, with respect to claims 1, 2, 21, and 43, the Requester suggests that Murphy '640 teaches "a free standing (thus portable) cabinet for warming a towel 18 that includes a cavity for holding a towel support 9. See Col. 3, lines 24-25, 36, 51. According to Murphy/640, 'a large bath towel can be warmed in a period of approximately three minutes.' Col. 2, lines 5-7, Col. 4, lines 1-2."

*40.*     In items 35, 48, and 59, the Requester also refers to the following teachings from Murphy '640:

> Due to the use of the heated air and the construction of the cabinet and rack, both the inner and outer surfaces of the towel are heated, thereby increasing the efficiency of the heating operation and enabling a towel to be warmed in a period of about three minutes. (Col. 2, ll. 3–7)

> Mounted within cabinet 1 is a tubular rack or towel support 9.
> (Col. 3, ll. 24 and 25)

> Cabinet 1 can either be free standing or wall mounted. (Col. 3, l. 36)

Application/Control Number: 90/019,271                                         Page 10
Art Unit: 3993

> A towel 18 to be warmed is draped over the rack with the side portions of the
> towel being in spaced relation to each other, as shown in FIG. 5.
> (Col. 3, ll. 51–53)

> With the construction of the invention, both the inner and outer surfaces of the
> towel are heated or warmed, and due to the efficiency of the operation, a **large
> bath towel** can be warmed in a period of approximately three minutes.
> (Col. 3, l. 66–Col. 4, l. 2) (emphasis added by the examiner)

*41.*     Since Murphy '640 teaches the use of his device to warm "a large bath towel," it appears

that the interior of cabinet 1 is large enough to accept a standard bath towel. Thus, with respect to

the standard bath towel limitation, Murphy '640 presents a new, non-cumulative technological

teaching that was not previously considered and discussed on the record during the prosecution of

the application which resulted in the subject patent such that a reasonable examiner would consider

the teachings of Murphy '640 important in deciding whether or not claims 1, 2, 21, and 43 are

patentable. Moreover, since this teaching was not considered during the previously concluded

examination, Murphy '640 has been presented in a new light as compared to the previously

concluded examination.

## Single lid limitation

*42.*     In items 48 and 59 of the Request, with respect to claims 21 and 43, the Requester

suggests that Murphy '640 teaches "a free standing (thus portable) cabinet for warming a towel

18 that includes a cover 2 hinged to the upper edge and an inner cavity for holding a towel

support 9. See Col. 3, lines 24- 25, 36, 51."

*43.*     In items 48 and 59, the Requester also refers to the following teaching from Murphy

'640:

> FIGS. 1-5 illustrate a towel warmer including an open top cabinet or housing 1,
> and a cover 2 is hinged to the upper edge of cabinet 1 through hinge 3 and is
> movable between a closed and open position. (Col. 3, ll. 13–16)

Application/Control Number: 90/019,271 Page 11
Art Unit: 3993



**44.** Referring to the figures and the description, it appears that Murphy '640 teaches the use of a single lid (cover 2) for closing the top of cabinet 1. Thus, with respect to the single lid limitation, Murphy '640 presents a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application which resulted in the subject patent such that a reasonable examiner would consider the teachings of Murphy '640 important in deciding whether or not claims 21 and 43 are patentable. Moreover, since this teaching was not considered during the previously concluded examination, Murphy '640 has been presented in a new light as compared to the previously concluded examination.

**45.** Accordingly, **Murphy '640 raises a SNQ with respect to claims 1, 2, 21, and 43**.

### US Patent No. 5,842,287 to Murphy ("Murphy '287")

**46.** In items 12, 17, 22, and 28 of the Request, the Requester suggests that Murphy '287 raises a SNQ with respect to claims 1, 2, 21, and 43.

**47.** Murphy '287 was previously cited during the earlier concluded examination of the application that issued as the subject patent. See the Information Disclosure Statement submitted 06/29/2006 and attached to the 04/02/2008 Office Action. Thus, Murphy '287 is considered to be "old art."

**48.** During the previously concluded examination, the prior examiner did not address Murphy '287 with respect to the claims. Thus, if Murphy '287 teaches any new, non-cumulative

technological teaching that was not previously considered and discussed on the record during the prosecution of the application that resulted in the subject patent, then Murphy '287 may raise a SNQ.

**Standard bath towel limitation**

*49.*     In items 37, 50, and 61 of the Request, with respect to claims 1, 2, 21, and 43, the Requester suggests that Murphy '287 teaches "a towel warmer 18 that includes a warming chamber 8 for rack 12. See Col. 2, lines 54-55. Murphy/287 is concerned with a towel warmer that can warm a towel in a short amount of time. See Col. 1, lines 6-8. Murphy/287 describes heated air passing through channels 29 flows downward on the towel 16, so that both the inner and outer surfaces of the towel are heated. See Col. 3, lines 30-34."

*50.*     In items 37, 50, and 61, the Requester also refers to the following teachings from Murphy '287:

> One product for creating a competitive edge is a towel warmer that is used to warm a towel in a relatively short period of time. (Col. 1, ll. 6–8)

> Mounted horizontally within warming chamber 8 is a tubular rack 12 having an upper section 13 that is generally rectangular in cross-section and a lower section 14 which has a reduced width. (Col. 2, ll. 54–57)

> The heated air being discharged from the upper end 31 of channel 29 flows into the upper end of the cabinet and then passes downwardly along the outer surface of the towel 16, so that both the inner and outer surfaces of the towel will be heated or warmed. (Col. 3, ll. 30–34)

*51.*     According to its abstract, Murphy '287 is "An apparatus for warming towels, or other articles."

*52.*     In contrast with the device of Warren, which device accepts towelettes in its warming cavity (vessel 11), Murphy '287 discloses that its warming compartment can accept a towel. For this reason, Murphy '287 presents a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application which resulted in the subject patent such that a reasonable examiner would consider the teachings of Murphy '287 important in deciding whether or not claims 1, 2, 21, and 43 are patentable. Moreover, since this teaching was not considered during the previously concluded examination, Murphy '287 has been presented in a new light as compared to the previously concluded examination.

Application/Control Number: 90/019,271                                           Page 13
Art Unit: 3993

### Single lid limitation

*53.*     In items 50 and 61 of the Request, with respect to claims 21 and 43, the Requester suggests that Murphy '287 teaches "a towel warmer 18 that includes a cover 10 hinged to an upper edge … . See Col. 2, lines 49-50 … ."

*54.*     In items 50 and 61, the Requester also refers to the following teaching from Murphy '287:

> A cover 10 is hinged to the upper edge of rear wall 3 and is movable between a closed and an open position. (Col. 2, ll. 49–51)



*55.*     Referring to the figures and the description, it appears that Murphy '287 teaches the use of a single lid (cover 10) for closing the top of cabinet 1. Thus, with respect to the single lid limitation, Murphy '287 presents a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application which resulted in the subject patent such that a reasonable examiner would consider the teachings of Murphy '287 important in deciding whether or not claims 21 and 43 are patentable. Moreover, since this teaching was not considered during the previously concluded examination, Murphy '287 has been presented in a new light as compared to the previously concluded examination.

*56.*     Accordingly, **Murphy '287 raises a SNQ with respect to claims 1, 2, 21, and 43**.

Application/Control Number: 90/019,271                                    Page 14
Art Unit: 3993

## US Patent No. 6,179,162 to Motsenbocker

**57.**      In items 13, 18, 23, and 27 of the Request, the Requester suggests that Motsenbocker raises a SNQ with respect to claims 1, 2, 21, and 43.

**58.**      Motsenbocker was not previously considered/addressed in the prior examination of the patent application or a final holding of validity by the Federal Courts.

### Standard bath towel limitation

**59.**      In items 39, 52, and 63 of the Request, with respect to claims 1, 2, 21, and 43, the Requester suggests that Motsenbocker teaches "discloses a device 10 for warming towels that includes a towel warming chamber 14 for holding warm towels 26. See Col. 2, lines 35-47. In an alternative embodiment shown in FIG. 4, Motsenbocker describes the chamber storing 'folded towels 26' and a heating member 30 near the folded towels. Motsenbocker states that 'a variety of towel types, shapes and sizes can be used.' Col. 5, lines 38-40. Motsenbocker is concerned with a towel warmer that can dispense towels 'warm to the touch.' See Col. 1, line 52. Motsenbocker also describes using the towel warmer for baby wipes. See Col. 5, line 7."

**60.**      In items 39, 52, and 63, the Requester also refers to the following teachings from Motsenbocker:

> Thus, there exists a need for a disposable pre-moistened towel dispenser which provides a pre-moistened towel which is warm to the touch and avoids the discomforting sensation of cold on the skin of the user. (Col. 1, ll. 50–53)

> The dispensing device 10, includes a horizontally disposed base 12. If placed on a surface such as a table top, the dispensing device 10 can be supported by the base 12. Circumferentially attached to the upper surface of the base 12 and uniformly ascending to form a towel warming chamber 14 is the chamber wall, generally indicated at 16. The chamber wall 16 includes a base end 20 which is fixedly attached to the base 12 and an upper end 22. A chamber cover member 18 is removably attached to an upper end 22 of the chamber wall 16 so as to form a substantially leak proof seal. The cover member 18 is configured to define a towel extraction slit 24 through which warm moistened towels 26 can be dispensed as required. (Col. 2, ll. 35–47)

> Any of the embodiments described hereinabove can be used for a variety of personal, medical, or industrial applications. It is contemplated that this invention can be used for cradle to grave applications. For example, baby wipes, face cleaning, cosmetic removal, nail polish removal, skin tones, skin conditions, bug repellant, skin tan lotion or sun block, shaving applications and so forth. (Col. 5, ll. 4–10)

> It is also contemplated that a variety of towel types, shapes and sizes can be used. The particular configuration of the towels (e.g., vertical roll, horizontal roll,

Application/Control Number: 90/019,271                                           Page 15
Art Unit: 3993

folded vertical, folded horizontal, or doughnut-shape roll) is more a function of
the design of the dispensing device. (Col. 5, ll. 38–43)

*61.*     Motsenbocker does not state that its disclosed towels 26 are standard bath towels. Nor does

Motsenbocker give any indication as to the size of the towels 26. Moreover, in the specification,

Motsenbocker appears to use the terms "towel" and "towelette" interchangeably. See, for example,

col. 1, ll. 26 ("Disposable towels or towelettes which are of more durable construction than

common tissue have also been packaged and dispensed from portable dispensing devices."). Thus,

it appears that the Motsenbocker's "towels" may in fact be the same kind of towel taught by

Warren.

*62.*     Motsenbocker, as presented by the Requester, does not expressly or implicitly disclose that

its warming chamber 14 can accept a "standard bath towel." Thus, with respect to the standard bath

towel limitation, Motsenbocker does NOT present a new, non-cumulative technological teaching

that was not previously considered and discussed on the record during the prosecution of the

application which resulted in the subject patent such that a reasonable examiner would consider the

teachings of Motsenbocker important in deciding whether or not claims 1, 2, 21, and 43 are

patentable.

**Single lid limitation**

*63.*     In items 52 and 63 of the Request, with respect to claims 21 and 43, the Requester

suggests that Motsenbocker teaches "an extraction slit cover 58 removably secured over an

extraction slit 24 to reduce the effects of evaporation. See Col. 4, lines 58-60."

*64.*     In items 52 and 63, the Requester also refers to the following teaching from

Motsenbocker:

> Optional to all embodiments of the present invention described above is an
> extraction slit cover 58 which can be removably secured over the extraction slit
> 24 to reduce the effects of evaporation. (Col. 4, ll. 57–60)

*65.*     The examiner notes the following teaching:

> A chamber cover member 18 is removably attached to an upper end 22 of the
> chamber wall 16 so as to form a substantially leak proof seal. The cover member
> 18 is configured to define a towel extraction slit 24 through which warm
> moistened towels 26 can be dispensed as required. (Col. 2, ll. 43–47)



FIG. I

66.     Since Motsenbocker teaches the use of a cover 58 attached to a second cover member 18, Motsenbocker teaches the use of two lids in the same manner as Warren. As discussed above, the Board found that Warren's two lids do not read on a "single lid", where the term "single" was construed to recite "one and only one lid." For this reason, it appears that, Motsenbocker, as presented by the Requester, does not disclose the single lid limitation. Thus, Motsenbocker does NOT present a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application which resulted in the subject patent such that a reasonable examiner would consider the teachings of Motsenbocker important in deciding whether or not claims 21 and 43 are patentable.

67.     Accordingly, **Motsenbocker does not raise a SNQ with respect to claims 1, 2, 21, and 43**.

### *Warren, Governale, Maruca, Lovett, Cayley, and DeMars*

68.     In item 25, the Requester states, "years before the filing of the '895 patent, there were publications and patents in the same technological field of heating textile materials that clearly describe warming cavities that are 175-450 cubic inches or larger as explained below. Accordingly, Warren alone and in combination with the references Governale, Maruca, Lovett, Cayley, and DeMars can be viewed in a new light, or in a different way, as compared with their use in the earlier examination by combining Warren with these publication and patents to show the claim

Application/Control Number: 90/019,271                                      Page 17
Art Unit: 3993

limitations, namely the size of the warming cavity, are obvious in a manner that was not presented during examination."

*69.*      However, the Requester has not presented any new teachings from Warren, Governale, Maruca, Lovett, Cayley, and DeMars such that they can be viewed in a new light, or in a different way, as compared with their use in the earlier examination. Thus, as presented by the Requester, these references are not considered to raise SNQs.

### *Conclusion*

*70.*      SNQs affecting claims 1, 2, 21, and 43 of the subject patent are raised by the request for Ex Parte Reexamination.

*71.*      Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that ex parte reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in ex parte reexamination proceedings are provided for in 37 CFR 1.550(c).

*72.*      The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 8,481,895 throughout the course of this reexamination proceeding. See MPEP §§2207, 2282, and 2286.

*73.*      Please refer to MPEP §§2250 and 2295 regarding the manner of making amendments in reexamination proceedings.

### *Contact Information*

**All** correspondence relating to this ex parte reexamination proceeding should be directed:

By EFS:  Registered users may submit via the electronic filing system EFS-Web at
                https://efs.uspto.gov/efile/myportal/efs-registered

By Mail: Mail Stop Ex Parte Reexam
              Attn: Central Reexamination Unit
              Commissioner for Patents
              P.O. Box 1450
              Alexandria, VA   22313-1450

By FAX: (571) 273-9900
              Central Reexamination Unit

Application/Control Number: 90/019,271                                               Page 18
Art Unit: 3993

      By hand: Customer Service Window
                Attn: Central Reexamination Unit
                Randolph Building, Lobby Level
                401 Dulany Street
                Alexandria, VA  22314

      For EFS-Web transmissions, 37 CFR 1.8(a)(1)(i)(C) and (ii) state that correspondence (except for a request for reexamination and a corrected or replacement request for reexamination) will be considered timely filed if (a) it is transmitted via the Office's electronic filing system in accordance with 37 CFR 1.6(a)(4), and (b) includes a certificate of transmission for each piece of correspondence stating the date of transmission, which is prior to the expiration of the set period of time in the office action.

      Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

      /SARA S CLARKE/
      Primary Examiner, Art Unit 3993

      Sara Clarke
      Primary Examiner
      Central Reexamination Unit
      (571) 272-4873

Conferees: /rds/
                Russell D. Stormer
                Patent Reexamination Specialist, Art Unit 3993

                /EILEEN D LILLIS/
                SPRS,  Art Unit 3993

# Exhibit B

Patent

| Attorney Docket No. | 27-014 |
| --- | --- |

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| In re Application of | Curtis Taylor, *et al.* | Patent No. | 8,481,895 |
| --- | --- | --- | --- |
| Application No. | 11/410,764 | Art Unit: | |
| Filing Date: | April 25, 2006 | Examiner: | |
| Title: | PORTABLE WARMING DEVICE AND METHOD FOR WARMING AN ARTICLE | | |

### REQUEST FOR EX PARTE REEXAMINATION UNDER 37 CFR 1.510

Mail Stop *Ex Parte* Reexam
Attn: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Pursuant to 35 USC § 302 and 37 CFR §1.510, the undersigned ("Requestor") requests reexamination of claims 1, 2, 21 and 43 of US Patent No. 8,481,895 to Taylor *et al.*  The named inventors are Curtis Taylor, Douglas E. Whitner and Marc Louis Vitantonio.  Through an assignment recorded with the PTO, the inventors transferred their interest to Heatwave LLC on 4/24/2016.  *See* Reel/Frame 017809/0404.  Through an assignment recorded with the PTO, Heatwave LLC transferred its interest to Global Proton LLC on 6/26/2023.

### *Ex Parte* Reexamination Filing Requirements

The request includes the following:

1.    Pursuant to 35 U.S.C. §302 and 37 CFR §1.510(a), the reexamination fee of $2,520.00 established by the Director.

2.    Pursuant to 37 CFR §1.510(b)(1), a statement pointing out each substantial new

1

27-014

question of patentability based on prior patents and printed publications.

3.      Pursuant to 37 CFR §1.510(b)(2), an identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited prior art to every claim for which reexamination is requested.

4.      Pursuant to 37 CFR §1.510(b)(3), a copy of every patent or printed publication relied upon or referred to.

5.      Pursuant to 37 CFR §1.510(b)(4), a copy of US Patent No. 8,481,89 including the front face, drawings, and specification/claims (in double column format) for which reexamination is requested, and a copy of any disclaimer, certificate of correction, or reexamination certificate issued in the patent.

6.      Pursuant to 37 CFR §1.510(b)(4), a certification that a copy of the request filed by a person other than the patent owner has been served in its entirety on the patent owner at the address as provided for in § 1.33(c) and further to Patent Owner's Colorado Registered agent by first class mail at below addresses on October 6, 2023.

| FAY SHARPE LLP<br>1228 Euclid Avenue, 5th Floor<br>The Halle Building<br>Cleveland, OH 44115 | GLOBAL PROTON LLC<br>c/o SALIHU BABA ABDULLAHI<br>2574 Ingalls St<br>Edgewater, CO 80214, |
| --- | --- |

7.      Pursuant to 37 CFR §1.510(b)(6), the Requestor certifies that the statutory estoppel provisions of 35 U.S.C. 315(e)(1) or 35 U.S.C. 325(e)(1) do not prohibit requester from filing this *ex parte* reexamination request.

## IDENTIFICATION OF CLAIMS FOR WHICH REEXAMINATION IS REQUESTED

8.      In accordance with 37 CFR §1.510(b)(2):

9.      Reexamination of claims 1-2 is requested in view of combination of U.S. Patent No. 5,231,266 ("Warren") and U.S. Patent Publication No. 2002/0133969 ("Casella").

10.     Reexamination of claims 1-2 is requested in view of combination of Warren and 5,815,961 ("Estes").

11.     Reexamination of claims 1-2 is requested in view of combination of Warren and U.S. Patent No. 5,606,640 ("Murphy/640").

12.     Reexamination of claims 1-2 is requested in view of Warren and U.S. Patent No.

27-014

5,842,287 ("Murphy/287").

13.     Reexamination of claims 1-2 is requested in view of combination of Warren and U.S. Patent No. 6,179,162 ("Motsenbocker").

14.     Reexamination of claim 21 is requested in view of combination of Warren, U.S. Patent No. 3,626,152 ("Governale"), U.S. Patent No. 7,191,546 ("Maruca"), U.S. Patent No. 4,927,995 ("Lovett"), U.S. Patent No. 4,117,309 ("Cayley"), and U.S. Patent No. 4,918,290 ("DeMars") and further in view of Casella.

15.     Reexamination of claim 21 is requested in view of combination of Warren, Governale, Maruca, Lovett, Cayley and DeMars and further in view Estes.

16.     Reexamination of claim 21 is requested in view of combination of Warren, Governale, Maruca, Lovett, Cayley and DeMars and further in view of Murphy/640.

17.     Reexamination of claim 21 is requested in view of combination of Warren, Governale, Maruca, Lovett, Cayley and DeMars and further in view of Murphy/287.

18.     Reexamination of claim 21 is requested in view of combination of Warren, Governale, Maruca, Lovett, Cayley and DeMars and further in view of Motsenbocker.

19.     Reexamination of claim 43 is requested in view of combination of Warren, Governale, Maruca, Lovett and DeMars and further in view of Casella.

20.     Reexamination of claim 43 is requested in view of combination of Warren, Governale, Maruca, Lovett and DeMars and further in view of Estes.

21.     Reexamination of claim 43 is requested in view of combination of Warren, Governale, Maruca, Lovett and DeMars and further in view of Murphy/640.

22.     Reexamination of claim 43 is requested in view of combination of Warren, Governale, Maruca, Lovett and DeMars and further in view of Murphy/287.

23.     Reexamination of claim 43 is requested in view of combination of Warren, Governale, Maruca, Lovett and DeMars and further in view of Motsenbocker.

## STATEMENT POINTING OUT EACH SUBSTANTIAL NEW QUESTION OF PATENTABILITY

24.     The '895 patent describes a portable warming device that includes a heating arrangement that heats a surface of the portable warming device so as to heat a towel that is in contact with the heated surface. *See* '895 patent, Abstract.

3

27-014



25.     The '895 Patent was issued after the Patent Owner overcame a 35 USC 102(b) rejection by successfully arguing before the Board of Patent Appeals that the prior art (U.S. Patent No. 5,231,266 to Warren) alone and in combination with references U.S. Patent No. 3,626,152 ("Governale"), U.S. Patent No. 7,191,546 ("Maruca"), U.S. Patent No. 4,927,995 ("Lovett"), U.S. Patent No. 4,117,309 ("Cayley"), and U.S. Patent No. 4,918,290 ("DeMars") did not disclose "a warming cavity having a volume of 175-450 cubic inches to hold at least one standard bath towel". *See* Decision on Appeal, Appeal No. 2010-005477, p. 7.  An important point is that in the appeal the Patent Owner argued that the specification of the '895 Patent defines the term "standard bath towel" as a bath towel that is about 27-30" by 52-60" and has a thickness of about 0.125-025", thus having an average volume of about 175-450 cubic inches.  *See id.*  However, years before the filing of the '895 patent, there were publications and patents in the same technological field of heating textile materials that clearly describe warming cavities that are 175-450 cubic inches or larger as explained below.  Accordingly, Warren alone and in combination with the references Governale, Maruca, Lovett, Cayley, and DeMars can be viewed in a new light, or in a different way, as compared with their use in the earlier examination by combining Warren with these publication and patents to show the claim limitations, namely the size of the warming cavity, are obvious in a manner that was not presented during examination.

26.     US Patent No. 5,815,961 to Estes and Patent Publication Nos. 2002/0133969 to Casella published in 1998 and 2002 respectively (years before the Dec. 2004 effective filing date

27-014

the '895 patent) disclose similar devices for dry heating textile materials that include cavities that are larger than 175-450 cubic inches. Estes and Casella were not of record in the file for the '895 patent. Accordingly, the teachings of Estes and Casella each raise a new question of patentability.

| Estes cavity large enough to hold clothing | Casella cavity large enough to hold clothing |
|---|---|



27. U.S. Patent No. 6,179,162 to Motsenbocker also describes a device for warming towels that includes a towel warming chamber 14 for holding warm towels 26. *See* Col. 2, lines 35-47. In an alternative embodiment shown in FIG. 4, Motsenbocker describes the chamber storing "folded towels 26" and a heating member 30 near the folded towels. Motsenbocker was not of record in the file for the '895 patent. Accordingly, the teachings of Motsenbocker raise a new question of patentability.

| Motsenbocker cavity large holding folded towels |
|---|



28. U.S. Patent Nos. 5,842,287 and 5,606,640 to Murphy also disclose towel warmers with cavities that are large enough to hold one standard bath towel. Although these two patents

27-014

were cited in IDS during prosecution, they were not relied upon in any rejection of the claims during the prosecution of the '895 Patent. Moreover, as discussed below, these two patents can be viewed a new light, or in a different way, as compared with their (non) use in the earlier examination by combining each of them with Warren. Accordingly, substantially new questions are raised by these two Murphy patents.

| Murphy/287 cavity large enough to hold towels | Murphy/640 cavity large enough to hold towel 18 |
|---|---|
|  | |

29.     Each of the above references teaches or suggests Warren's missing feature of "warming cavity having a volume to hold one standard towel" of claim 1, and "up to two standard bath towels" of claim 21 and "said warming cavity having a total volume of at least about 175 cubic inches" of claim 43.

## DETAILED EXPLANATION UNDER 37 CFR 1.510(b)

30.     *Claim 1 of '895 Patent is unpatentable under 35 U.S.C. 103(a) as being obvious over Warren in view of Casella as described below.*

| Claim | US Patent No. 8,481,895 Limitation | Warren |
|---|---|---|
| 1a | A portable textile warmer designed to dry heat warm a textile comprising: | Warren discloses a towelette warmer that may be used to heat cloth towelettes (col. 2, line 59-61). Fig. 1 of Warren shows that the warmer includes what appears to be handle 2. Warren discloses |

27-014

| | | that the warmer can be used in different environments such as in automobiles (col. 3, line 35), thus implying that the warmer is portable. |
|---|---|---|
| 1b | a housing body | Body 1. (Col. 2, line 13) |
| 1c | having a bottom portion | bottom of body 1. (figure 2) |
| 1d | a top portion | lip portion of body 1. (figure 2) |
| 1e | an inner shell | towelette dispenser 12. (figure 2) |
| 1f | and a lid | first lid 5. (figure 1 and 2) or second lid 7 |
| 1e | said inner shell having an inner surface | towelette dispenser 12. (figure 2) |
| 1g | that at least partially forms a warming cavity | Towelette dispenser 12 (Figure 2) |
| 1h | said warming cavity having a base wall | Bottom of towelette dispenser 12 (Figure 2) |
| 1i | and a side wall | Side of towelette dispenser 12 (Fig. 2) |
| 1j | said warming cavity having a volume to hold at least one standard bath towel | |
| 1k | said lid positionable on said top portion of said housing | first lid 5 is attached to body at top of the housing body 1. (col. 2, lines 13) second lid 7 is also attached to the top of the housing body 1. (Figs. 1 and 2) |
| 1l | said lid movable between an open and a closed position | The first lid 5 attached by a hinge 4 to the body. (col. 2, lines 13-14). The second lid 7 is attached by hinge 6 and movable between open and closed position as shown in FIG. 2. |
| 1m | wherein said lid in the closed position causing said one or more textiles in said | The first lid 5 has an aperture (16 in FIG. 2) which is covered by a second lid 7 |

27-014

|  |  |  |
|---|---|---|
|  | warming cavity to be substantially encapsulated by said warming cavity | hinged 6 to the first lid 5, through which towelettes are dispensed one at a time.(column 2, line 14-17) (figure 1 and 2) |
| 1n | said lid in the open position enabling one or more textiles to be inserted or removed from said warming cavity | The first lid 5 has an aperture (16 in FIG. 2) which is covered by a second lid 7 hinged 6 to the first lid 5, through which towelettes are dispensed one at a time.(column 2, line 14-17) (figure 1 and 2) |
| 1o | and a heating arrangement designed to dry heat one or more textiles positioned in said warming cavity | resistive heating element 10 in bottom of vessel 11 heats the towels. (Col. 2, lines 23-24 and 36-37) (Fig. 2). Warren also recites in claim 1 that the electric heater is in substantial thermal contact with the vessel 11. |
| 1p | said heating arrangement including a resistive heating element | resistive heater 10 (col. 2, lines 23-24) |
| 1q | a heating controller | thermostat / temperature control (column 2, line 32-40) |
| 1r | a current connector | electrical cord 3 / cord 8 combination (column 2, line 26-31) |
| 1s | and an activation switch | thermostat / temperature control (column 2, line 32-40) |
| 1t | said resistive heating element positioned on an outer surface of said inner shell and about said side wall of said warming cavity, in close proximity to said outer surface of said inner shell and about said side wall of said warming cavity, or combinations thereof; | resistive element 10 positioned between outer surface of the inner shell / towelette dispenser 12 and inner surface of the outer shell / body 1 to heat the cavity (column 2, line 18-26) (figure 2) |

27-014

| | | |
|---|---|---|
| 1u | said resistive heating element designed to heat said inner surface of said inner shell; | resistive element 10 positioned between outer surface of the inner shell / towelette dispenser 12 and inner surface of the outer shell / body 1 to heat the cavity (column 2, line 18-26) (figure 2) |
| 1v | said current connector designed to connect to a current source to provide current to said resistive heating element; | electrical cord 3 / cord 8 combination (column 2, line 26-31) |
| 1w | said heating controller terminating a flow of current to said resistive heating element once a predetermined period of time has passed since said activation switch has been actuated by a user, after a temperature sensor senses a predetermined temperature after a user has actuated said activation switch, or combinations thereof. | a temperature sensor senses a predetermined temperature; thermostat / temperature control (column 2, line 32-40) |

31.     Warren describes an approach for making a more pleasant flagrance for the towels. *See* Col. 3. Lines 50-55.  In the same technical field of dry heating textile materials, US Patent Publication No. 2002/0133969 to Casella discloses a cavity where a textile material is dry heated in a cavity 20 large enough to hold an article of clothing 26 which is larger than a standard towel. Casellas also is concerned with problem of providing a drying apparatus that may be used as an air-fresheners [0027].  Casellas is also concerned with providing a drying apparatus that removes wrinkles from textile materials [0012].  It would have been obvious to one of ordinary skill in the art to have modified the cavity of Warren to be larger to hold an article of clothing as taught in Casella for the purposes of providing a more pleasant fragrance for textile materials and removing wrinkles.

| Claim | US Patent No. 8,481,895 Limitation | Casella |
|---|---|---|
| 1j | said warming cavity having a volume to hold at least one standard bath towel | [0014] The working model size includes a housing that is dimensioned to be sixty inches tall, twenty-four inches wide and |

27-014

| | | eleven inches deep. However, larger and smaller models based on the same process and design as the preferred embodiment have been tested and are likewise effective at solving the above mentioned problems inherent in the prior art. (specification)<br><br>[0019] The lower compartment is of a generally larger size than the upper compartment and is dimensioned to accept an article of clothing. (specification)<br><br>[0039] The lower compartment 20 is of a generally larger size than the upper compartment 22 and is dimensioned to accept the article of clothing 26. As shown in FIG. 1, the article of clothing 26 is a Shirt. However, it is recognized that the housing may be adapted to dry and de-wrinkle other articles of clothing, or non-clothing items, Such as towels, sheets, blankets, or the like. In the preferred embodiment of the invention, (specification) |
|---|---|---|

32.   *Claim 1 of '895 Patent is unpatentable under 35 U.S.C. 103(a) as being obvious over Warren in view of Estes as described below.*

33.   Warren describes an approach for making a more pleasant flagrance for towels.  *See* Col. 3. Lines 50-55.  In the same technical field of dry heating textile materials, U.S. Patent No. 5,815,961 to Estes discloses a clothes treating apparatus that include a cavity (cabinet) 12 large enough to hold a hanging assembly 26 where a textile material is dry heated.  *See* Col. 3, lines 28-

10

27-014

30 and 39.  The hanging assembly 26 is designed to support a shirt-like clothing (col. 5, lines 7-8), which is larger than a standard towel.  Estes also is concerned with deodorizing and removing wrinkles from clothing (col. 1, lines 9-10).  It would have been obvious to one of ordinary skill in the art to have modified the cavity of Warren to be larger to hold an article of clothing as taught in Estes for the purposes of deodorizing and removing wrinkles from textile materials.

| Claim | US Patent No. 8,481,895 Limitation | Estes |
|---|---|---|
| 1j | said warming cavity having a volume to hold at least one standard bath towel | Cabinet 12 form an anterior region 14. Col. 3, line 18.  Anterior region 14 includes a hanging assembly 26 is designed to support a shirt-like clothing (col. 5, lines 7-8), which is larger than a standard towel. assembly |

34.  *Claim 1 of '895 Patent is unpatentable under 35 U.S.C. 103(a) as being obvious over Warren in view of Murphy/640 as described below.*

35.  Warren describes an approach for heating towels.  *See* Col. 3. Lines 50-55.  In the same technical field of dry heating textile materials, U.S. Patent No. 5,606,640("Murphy/640") discloses a free standing (thus portable) cabinet for warming a towel 18 that includes a cavity for holding a towel support 9.  *See* Col. 3, lines 24-25, 36, 51.  According to Murphy/640, "a large bath towel can be warmed in a period of approximately three minutes."  Col. 2, lines 5-7, Col. 4, lines 1-2.  It would have been obvious to one of ordinary skill in the art to have modified the cavity of Warren to be larger to hold a large bath towel as taught in Murphy/640 for the purposes of decreased warm timing.

| Claim | US Patent No. 8,481,895 Limitation | Murphy/640 |
|---|---|---|
| 1j | said warming cavity having a volume to hold at least one standard bath towel | cabinet for warming a towel 18 that includes a cavity for holding a towel support 9.  *See* Col. 3, lines 24-25, 36, 51 |

36.  *Claim 1 of '895 Patent is unpatentable under 35 U.S.C. 103(a) as being obvious*

11

27-014

*over Warren in view of Murphy/287 as described below.*

37.     Warren describes an approach for heating towels.  *See* Col. 3. Lines 50-55.  In the same technical field of dry heating textile materials, U.S. Patent No. 5,842,287("Murphy/287") discloses a towel warmer 18 that includes a warming chamber 8 for rack 12.  *See* Col. 2, lines 54-55.  Murphy/287 is concerned with a towel warmer that can warm a towel in a short amount of time.  *See* Col. 1, lines 6-8.  Murphy/287 describes heated air passing through channels 29 flows downward on the towel 16, so that both the inner and outer surfaces of the towel are heated.  *See* Col. 3, lines 30-34. It would have been obvious to one of ordinary skill in the art to have modified the cavity of Warren to be larger to hold a large bath towel as taught in Murphy/287 for the purposes of warming both sides of the towel and decreased warm timing.

| Claim | US Patent No. 8,481,895 Limitation | Murphy/287 |
|---|---|---|
| 1j | said warming cavity having a volume to hold at least one standard bath towel | Claim 1 recites: An apparatus for warming articles, comprising an outer cabinet including a pair of generally parallel side walls and a pair of end walls connecting said side walls together, an interior wall. A towel warmer 18 that includes a warming chamber 8 for rack 12.  *See* Col. 2, lines 54-55. Heated air passing through channels 29 flows downward on the towel 16, so that both the inner and outer surfaces of the towel are heated.  *See* Col. 3, lines 30-34. |

38.     *Claim 1 of '895 Patent is unpatentable under 35 U.S.C. 103(a) as being obvious over Warren in view of Motsenbocker as described below.*

39.     Warren describes an approach for heating towels.  *See* Col. 3. Lines 50-55.  In the same technical field of dry heating textile materials, U.S. Patent No. 6,179,162 to Motsenbocker

27-014

discloses a device 10 for warming towels that includes a towel warming chamber 14 for holding warm towels 26. *See* Col. 2, lines 35-47. In an alternative embodiment shown in FIG. 4, Motsenbocker describes the chamber storing "folded towels 26" and a heating member 30 near the folded towels. Motsenbocker states that "a variety of towel types, shapes and sizes can be used." Col. 5, lines 38-40. Motsenbocker is concerned with a towel warmer that can dispense towels "warm to the touch." *See* Col. 1, line 52. Motsenbocker also describes using the towel warmer for baby wipes. *See* Col. 5, line 7. It would have been obvious to one of ordinary skill in the art to have modified the cavity of Warren to be larger to hold folded towels 26 as taught in Motsenbocker for the purposes of dispensing towels warm to the touch and for towels for babies just like Warren.

40.     *Claim 2 is unpatentable under 35 U.S.C. 103(a) as being obvious over: Warren in view of Casella; Warren in view of Estes; Warren in view of Murphy/640; Warren in view of Murphy/287; and Warren in view of Motsenbocker.*

41.     Claim 2 depends from claim 1. As discussed above, the combination of Warren in view of each of Estes, Murphy/640, Murphy/287 and Motsenbocker teaches claim 1. Warren further discloses the limitations of claim 2 as described below.

| Claim | US Patent No. 8,481,895 Limitation | Warren |
|-------|-----------------------------------|--------|
| 2 | wherein an outer surface of said resistive heating element includes an electrically insulating material | The temperature controlled resistance heater is surrounded by an incorporated insulated material (Col. 2, line 67 – Col. 3, line 3) |

42.     *Claim 21 is unpatentable under 35 U.S.C. 103(a) as being obvious over Warren in view of Governale, Maruca, Lovett, Cayley, DeMars (per the final rejection) and further in view of Casella.*

| Claim | Limitation | Warren | Governale/Maruca/Lovett/Cayley/DeMars |
|-------|-----------|--------|----------------------------------------|
| 21a | A portable towel warmer | Warren discloses a | |

27-014

| | | | |
|---|---|---|---|
| | designed to dry heat at least one towel comprising: | towelette warmer that may be used to heat cloth towelettes (col. 2, line 59-61). Fig. 1 of Warren shows that the warmer includes what appears to be handle 2. Warren discloses that the warmer can be used in different environments such as in automobiles (col. 3, line 35), thus implying that the warmer is portable. | |
| 21b | a body having a bottom housing | Body 1. (Col. 2, line 13); bottom of body 1. (figure 2) | |
| 21c | a top housing | lip portion of body 1. (figure 2) | |
| 21d | an inner shell | towelette dispenser 12. (figure 2) | |
| 21e | an outer shell | Body 1 | |
| 21f | and a single lid | | |
| 21g | said inner shell having an inner surface that at least partially forms a warming cavity | | |
| 21h | said body having a total volume of less than about 8000 cubic inches | | Governale describes a configuration that weighs about 8 pounds and less than 8000 cubic inches. |
| 21i | said warming cavity including a base wall | Bottom of towelette dispenser 12 (Figure 2) | |

14

27-014

| 21j | and at least one side wall formed by said inner surface of said inner shell | Side of towelette dispenser 12 (Fig. 2) | |
|---|---|---|---|
| 21k | said warming cavity having a volume to hold at least one standard bath towel and up to two standard bath towels | | |
| 21l | said lid pivotly connected on said top housing | first lid 5 is attached to body at top of the housing body 1. (col. 2, lines 13) second lid 7 is also attached to the top of the housing body 1. (Figs. 1 and 2) | |
| 21m | said lid movable between an open and a closed position | The first lid 5 attached by a hinge 4 to the body. (col. 2, lines 13-14). The second lid 7 is attached by hinge 6 and movable between open and closed position as shown in FIG. 2. | |
| 21n | wherein said lid in the closed position causing the at least one towel in said warming cavity to be substantially encapsulated by said warming cavity | The first lid 5 has an aperture (16 in FIG. 2) which is covered by a second lid 7 hinged 6 to the first lid 5, through which towelettes are dispensed one at a time.(column 2, line 14-17) (figure 1 and 2) | |
| 21o | said lid in the open position | The first lid 5 has an | |

15

2b8b09c879fa8c7b

27-014

| | | |
|---|---|---|
| | enabling the at least one towel to be inserted or removed from said warming cavity | aperture (16 in FIG. 2) which is covered by a second lid 7 hinged 6 to the first lid 5, through which towelettes are dispensed one at a time.(column 2, line 14-17) (figure 1 and 2) | |
| 21p | said bottom of said inner shell including at least one drain opening to enable fluid to drain out from said warming cavity | | Maruca describes a clothing drying apparatus including a collection tank 86 in the bottom of the device (FIG. 6). Maruca states the collection tank can be replaced with a drain hose. |
| 21q | a heating arrangement at least partially positioned in said housing and designed to dry heat the at least one towel positioned in said warming cavity | resistive heating element 10 in bottom of vessel 11 heats the towels. (Col. 2, lines 23-24 and 36-37) (Fig. 2). Warren also recites in claim 1 that the electric heater is in substantial thermal contact with the vessel 11. | |
| 21r | said heating arrangement including a heating mat | | Lovett describes a heating element being a heating mat (22a-22d) (col. 4, lines 59-66) |
| 21s | a heating controller | thermostat / temperature control (column 2, line 32-40) | |

27-014

| 21t | a current connector | electrical cord 3 / cord 8 combination (column 2, line 26-31) | |
|---|---|---|---|
| 21u | a visual indicator | | Cayley describes a towel warmer including an ON/OFF light (45). Lovett describes a towel warmer including a touch-pad control panel 18 (col. 3, lines 11-12). The control panel 18 includes plural visual indicator HOT, MEDIUM, WARM in the right region and four flashing message displays (col. 3, lines 59-66). |
| 21v | and an activation switch | | Cayley describes a towel warmer including an ON/OFF light (45). |
| 21w | said heating arrangement designed to generate at least about 100 watts of energy and no more than about 1500 watts of energy and to heat said warming cavity to a temperature of at least about 105° F. and no more than about 330° F | | Lovett describes a heating element having total wattage of no more than 300 watts. (col. 4, lines 59-66). The temperature range of 105-330 is merely an optimization of general working conditions |
| 21x | a majority of said heating mat positioned between said inner and outer shell of said body | Warren describes heating element (10) between inner shell (vessel 11) and | Lovett describes a heating element being a heating mat (22a-22d) (col. 4, lines |

27-014

| | | | |
|---|---|---|---|
| | | outer shell (body 1). | 59-66) |
| 21y | a majority of said heating mat positioned on an outer surface of said inner shell and about said side wall of said warming cavity, in close proximity to said outer surface of said inner shell and about said side wall of said warming cavity, or combinations thereof; | Warren describes the heating element being about the bottom and sides of the vessels 11(col. 2, lines 23-26). | DeMars describes a heating mat (silicon heating elements 72, 74) bonded to the inner surface (col. 2, lines 57-61). |
| 21z | said current connector designed to connect to a current source to provide current to said heating mat | electrical cord 3 / cord 8 combination (column 2, line 26-31) | |
| 21aa | said visual indicator including an indicator to show when current is flowing through said heating mat | | Cayley describes a towel warmer including an ON/OFF light (45). |
| 21ab | said current connector including an electric power cord and a wall outlet connector | Warren describes electric cord 3 and wall outlet connector 8 (col. 2, lines 26-31; Fig. 1) | |
| 21ac | said heating controller terminating a flow of current to said heating mat once a predetermined period of time has passed since said activation switch has been actuated by a user, after a temperature sensor senses a predetermined temperature after a user has | Warren describes a variable thermostat that may be used by the user to vary temperature of the towelettes (col. 2, lines 32-36) | Lovett describes a heating element being a heating mat (22a-22d) (col. 4, lines 59-66) |

27-014

| | | | |
|---|---|---|---|
| | actuated said activation switch, or combinations thereof; | | |
| 21ad | said body and said heating arrangement having a total weight of no more than about 30 pounds. | | Governale describes a configuration that weighs about 8 pounds. |

43.    As explained in the Final Rejection, the Appeal decision and shown above the combination of Warren, Governale, Maruca, Lovett, Cayley and DeMars teaches all the features of claim 21 except (i) a single lid; and (ii) said warming cavity having a volume to hold at least one standard bath towel and up to two standard bath towels.

44.    Warren describes an approach for making a more pleasant flagrance for the towels. *See* Col. 3. Lines 50-55.  In the same technical field of dry heating textile materials, US Patent Publication No. 2002/0133969 to Casella discloses a cavity where a textile material is dry heated in a cavity 20 large enough to hold an article of clothing 26, which is larger than a standard towel and up to two standard bath towels.  Casella discloses that a single lid (door) 86 dimensioned to seal the lower compartment 20 where clothing is so that air does not escape is mounted on front of the housing 12 and swings open on a hinge 88 [0051].  Casellas also is concerned with providing a drying apparatus that may be used as an air-freshener [0027].  Casellas is also concerned with providing a drying apparatus that removes wrinkles from textile materials [0012].  It would have been obvious to one of ordinary skill in the art to have further modified  Warren (as modified per the combination of Governale, Maruca, Lovett, Cayley and DeMars) to make the cavity larger to hold an article of clothing and to have a single lid as taught in Casella for the purposes of providing a more pleasant fragrance for textile materials and removing wrinkles and preventing air escape from the cavity.

| Claim | US Patent No. 8,481,895 Limitation | Casella |
|---|---|---|
| 21f | and a single lid | [0051] A single lid (door) 86 is mounted on front of the housing 12 and swings open on a hinge 88. |
| 21l | said lid pivotly connected on said top | [0051] A single lid (door) 86 is mounted |

27-014

| | | |
|---|---|---|
| | housing | on front of the housing 12 and swings open on a hinge 88. |
| 21m | said lid movable between an open and a closed position | [0051] A single lid (door) 86 is mounted on front of the housing 12 and swings open on a hinge 88. |
| 21n | wherein said lid in the closed position causing the at least one towel in said warming cavity to be substantially encapsulated by said warming cavity | [0051] A single lid (door) 86 is dimensioned to seal the lower compartment 20 where clothing is so that air does not escape. |
| 21k | said warming cavity having a volume to hold at least one standard bath towel and up to two standard bath towels | [0014] The working model size includes a housing that is dimensioned to be sixty inches tall, twenty-four inches wide and eleven inches deep. However, larger and smaller models based on the same process and design as the preferred embodiment have been tested and are likewise effective at solving the above mentioned problems inherent in the prior art. (specification) [0019] The lower compartment is of a generally larger size than the upper compartment and is dimensioned to accept an article of clothing. (specification) [0039] The lower compartment 20 is of a generally larger size than the upper compartment 22 and is dimensioned to accept the article of clothing 26. As shown in FIG. 1, the article of clothing 26 is a Shirt. However, it is recognized that the housing may be adapted to dry |

27-014

| | | and de-wrinkle other articles of clothing, or non-clothing items, Such as towels, sheets, blankets, or the like. In the preferred embodiment of the invention, (specification) |
| --- | --- | --- |

45.    *Claim 21 of '895 Patent is unpatentable under 35 U.S.C. 103(a) as being obvious over Warren, Governale, Maruca, Lovett, Cayley, DeMars (per the final rejection) and further in view of Estes as described below.*

46.    Warren describes an approach for making a more pleasant flagrance for the towels. *See* Col. 3. Lines 50-55.  In the same technical field of dry heating textile materials, U.S. Patent No. 5,815,961 to Estes discloses a clothes treating apparatus that include a single lid (door) 16 is hingedly connected to the cabinet 12 for closing the anterior region 14 where a textile material is dry heated in the cabinet large enough to hold a hanging assembly 26.  *See* Col. 3, lines 18-20, 28-30 and 39.  The door 16 seals the interface with the cabinet 12.  The hanging assembly 26 is designed to support a shirt-like clothing (col. 5, lines 7-8), which is larger than a standard towel and up to two standard bath towels.  Estes also is concerned with deodorizing and removing wrinkles from clothing (col. 1, lines 9-10).  It would have been obvious to one of ordinary skill in the art to have modified Warren (as modified per the combination of Governale, Maruca, Lovett, Cayley and DeMars) to make the cavity larger to hold an article of clothing as taught in Estes for the purposes of deodorizing and removing wrinkles from textile materials and to include a single lid for sealing the cavity as taught by Estes.

| Claim | US Patent No. 8,481,895 Limitation | Estes |
| --- | --- | --- |
| 21f | and a single lid | A single lid (door) 16 is hingedly connected to the cabinet 12 for closing the anterior region 14 (col. 3, lines 18-20). |
| 21k | said warming cavity having a volume to hold at least one standard bath towel and up to two standard bath towels | Cabinet 12 form an anterior region 14. Col. 3, line 18.  Anterior region 14 includes a hanging assembly 26 is designed to support a shirt-like clothing |

27-014

| | | (col. 5, lines 7-8), which is larger than a standard towel. assembly |
|---|---|---|
| | | |

47.    *Claim 21 of '895 Patent is unpatentable under 35 U.S.C. 103(a) as being obvious over Warren, Governale, Maruca, Lovett, Cayley, DeMars (per the final rejection) in view of Murphy/640 as described below.*

48.    Warren describes an approach for heating towels.  *See* Col. 3. Lines 50-55.  In the same technical field of dry heating textile materials, U.S. Patent No. 5,606,640("Murphy/640") discloses a free standing (thus portable) cabinet for warming a towel 18 that includes a cover 2 hinged to the upper edge and an inner cavity for holding a towel support 9.  *See* Col. 3, lines 24-25, 36, 51.  According to Murphy/640, "a large bath towel can be warmed in a period of approximately three minutes."  Col. 2, lines 5-7, Col. 4, lines 1-2.  It would have been obvious to one of ordinary skill in the art to have modified Warren (as modified per the combination of Governale, Maruca, Lovett, Cayley and DeMars) to include a single lid make the cavity larger to hold a volume to hold at least one standard bath towel and up to two standard bath towels as taught in Murphy/640 for the purposes of decreased warm timing.

| Claim | US Patent No. 8,481,895 Limitation | Murphy/640 |
|---|---|---|
| 21f | and a single lid | Towel warmer includes a cover 2 hinged to the upper edge. *See* Col. 3, lines 14-15. |
| 21k | said warming cavity having a volume to hold at least one standard bath towel and up to two standard bath towels | cabinet for warming a towel 18 that includes a cavity for holding a towel support 9.  *See* Col. 3, lines 24-25, 36, 51 |

49.    *Claim 21 of '895 Patent is unpatentable under 35 U.S.C. 103(a) as being obvious over Warren in view of Murphy/287 as described below.*

50.    Warren describes an approach for heating towels.  *See* Col. 3. Lines 50-55.  In the same technical field of dry heating textile materials, U.S. Patent No. 5,842,287("Murphy/287") discloses a towel warmer 18 that includes a cover 10 hinged to an upper edge and a warming

27-014

chamber 8 for rack 12. *See* Col. 2, lines 49-50 and 54-55. Murphy/287 is concerned with a towel warmer that can warm a towel in a short amount of time. *See* Col. 1, lines 6-8. Murphy/287 describes heated air passing through channels 29 flows downward on the towel 16, so that both the inner and outer surfaces of the towel are heated. *See* Col. 3, lines 30-34. It would have been obvious to one of ordinary skill in the art to have modified Warren (as modified per the combination of Governale, Maruca, Lovett, Cayley and DeMars) to include a single lid and make the cavity larger to have a volume to hold at least one standard bath towel and up to two standard bath towels as taught in Murphy/287 for the purposes of warming both sides of the towel and decreased warm timing.

51.     *Claim 21 of '895 Patent is unpatentable under 35 U.S.C. 103(a) as being obvious over Warren in view of Motsenbocker as described below.*

52.     Warren describes an approach for heating towels. *See* Col. 3. Lines 50-55. In the same technical field of dry heating textile materials, U.S. Patent No. 6,179,162 to Motsenbocker discloses a device 10 for warming towels that includes a towel warming chamber 14 for holding warm towels 26. *See* Col. 2, lines 35-47. Motsenbocker also discloses an extraction slit cover 58 removably secured over an extraction slit 24 to reduce the effects of evaporation. *See* Col. 4, lines 58-60. In an alternative embodiment shown in FIG. 4, Motsenbocker describes the chamber storing "folded towels 26" and a heating member 30 near the folded towels. Motsenbocker states that "a variety of towel types, shapes and sizes can be used." Col. 5, lines 38-40. Motsenbocker is concerned with a towel warmer that can dispense towels "warm to the touch." *See* Col. 1, line 52. Motsenbocker also describes using the towel warmer for baby wipes. *See* Col. 5, line 7. It would have been obvious to one of ordinary skill in the art to have modified Warren (as modified per the combination of Governale, Maruca, Lovett, Cayley and DeMars) to include a single lid to reduce the effects of evaporation and make cavity larger to hold folded towels 26 (at least one standard bath towel and up to two standard bath towels) as taught in Motsenbocker for the purposes of dispensing towels warm to the touch.

53.     *Claim 43 is unpatentable under 35 U.S.C. 103(a) as being obvious over Governale, Maruca, Lovett and DeMars (per the final rejection) and further in view of Casella.*

| Claim | Limitation | Warren | Governale/Maruca/Lovett/ DeMars |
|---|---|---|---|
| | | | |

27-014

| 43a | A portable towel warmer designed to dry heat at least one towel comprising: | Warren discloses a towelette warmer that may be used to heat cloth towelettes (col. 2, line 59-61). Fig. 1 of Warren shows that the warmer includes what appears to be handle 2. Warren discloses that the warmer can be used in different environments such as in automobiles (col. 3, line 35), thus implying that the warmer is portable. | |
|---|---|---|---|
| 43b | a body having a bottom housing | Body 1. (Col. 2, line 13) bottom of body 1. (figure 2) | |
| 43b | a top housing | lip portion of body 1. (figure 2) | |
| 43c | an inner shell | towelette dispenser 12. (figure 2) | |
| 43d | an outer shell | Body 1 | |
| 43f | and a single lid | | |
| 43g | said inner shell having an inner surface that at least partially forms a warming cavity | towelette dispenser 12. (figure 2) | |
| 43h | said body having a total volume of less than about 8000 cubic inches | | Governale describes a configuration that weighs about 8 pounds and less than 8000 cubic inches. |
| 43i | said warming cavity including a base wall | Bottom and side of towelette dispenser 12 | |

27-014

| | | | |
|---|---|---|---|
| | and at least one side wall formed by said inner surface of said inner shell | (Figure 2) | |
| 43j | said warming cavity having a total volume of at least about 175 cubic inches | | |
| 43k | said single lid pivotally connected on said top housing | first lid 5 is attached to body at top of the housing body 1. (col. 2, lines 13) second lid 7 is also attached to the top of the housing body 1. (Figs. 1 and 2) | |
| 43l | said lid movable between an open and a closed position | The first lid 5 attached by a hinge 4 to the body. (col. 2, lines 13-14). The second lid 7 is attached by hinge 6 and movable between open and closed position as shown in FIG. 2. | |
| 43m | wherein said lid in the closed position causing the at least one towel in said warming cavity to be substantially encapsulated by said warming cavity | The first lid 5 has an aperture (16 in FIG. 2) which is covered by a second lid 7 hinged 6 to the first lid 5, through which towelettes are dispensed one at a time.(column 2, line 14-17) (figure 1 and 2) | |
| 43n | said lid in the open | The first lid 5 has an | |

27-014

| | | | |
|---|---|---|---|
| | position enabling the at least one towel to be inserted or removed from said warming cavity | aperture (16 in FIG. 2) which is covered by a second lid 7 hinged 6 to the first lid 5, through which towelettes are dispensed one at a time.(column 2, line 14-17) (figure 1 and 2) | |
| 43o | a bottom of said inner shell including at least one drain opening to enable fluid to drain out from said warming cavity and out of said body | | Maruca describes a clothing drying apparatus including a collection tank 86 in the bottom of the device (FIG. 6). Maruca states the collection tank can be replaced with a drain hose. |
| 43p | said bottom housing including a non-slick surface to inhibit or prevent said bottom housing from slipping or inadvertently moving on a surface | | |
| 43q | a heating arrangement at least partially positioned in said housing and designed to dry heat the at least one towel positioned in said warming cavity without use of a fan or blower; | resistive heating element 10 in bottom of vessel 11 heats the towels. (Col. 2, lines 23-24 and 36-37) (Fig. 2). Warren also recites in claim 1 that the electric heater is in substantial thermal contact with the vessel 11. | |
| 43r | said heating | | Lovett describes a heating |

27-014

| | | | |
|---|---|---|---|
| | arrangement including a heating mat | | element being a heating mat (22a-22d) (col. 4, lines 59-66) |
| 43s | a heating controller | thermostat / temperature control (column 2, line 32-40) | |
| 43t | a current connector | electrical cord 3 / cord 8 combination (column 2, line 26-31) | |
| 43u | a plurality of visual indicators | | Lovett describes a towel warmer including a touch-pad control panel 18 (col. 3, lines 11-12). The control panel 18 includes plural visual indicator HOT, MEDIUM, WARM in the right region and four flashing message displays (col. 3, lines 59-66). |
| 43v | and an activation switch | | DeMars describes a portable textile warmer including a switch 34. |
| 43w | said heating arrangement designed to generate at least about 100 watts of energy and no more than about 1500 watts of energy and to heat said warming cavity to a temperature of at | | Lovett describes a heating element having total wattage of no more than 300 watts. (col. 4, lines 59-66). The temperature range of 105-330 is merely an optimization of general working conditions. |

27-014

| | | | |
|---|---|---|---|
| | least about 105° F. and no more than about 330° F | | |
| 43x | a majority of said heating mat positioned between said inner and outer shell of said body | | Lovett describes a heating element being a heating mat (22a-22d) (col. 4, lines 59-66). |
| 43y | said heating mat is positioned about said side wall of said warming cavity and at least about 80% of said outer surface of said inner shell | | DeMars describes a heating mat (silicon heating elements 72, 74) bonded to the inner surface (col. 2, lines 57-61). |
| 43z | said current connector designed to connect to a current source to provide current to said heating mat | electrical cord 3 / cord 8 combination (column 2, line 26-31) | |
| 43aa | at least one of said visual indicators including an indicators to indicate when current is flowing through said heating mat | | Lovett describes he control panel 18 includes plural visual indicator HOT, MEDIUM, WARM (col. 3, lines 59-66). Lovett further describes the HOT, MEDIUM, WARM touch pads energize the heating elements 22a-22d (col. 4, lines 8-12). |
| 43ab | said activation switch is positioned on said | | DeMars describes a portable textile warmer |

27-014

| | top housing | | including a switch 34 mounted on the top portion of the body housing (See FIGS. 1-2). |
|---|---|---|---|
| 43ac | said activation switch including a user depressible switch | | DeMars describes a portable textile warmer including a switch 34 that is a depressible switch (See FIGS. 1-2). |
| 43ad | said body and said heating arrangement having a total weight of no more than about 30 pounds | | Governale describes a configuration that weighs about 8 pounds. |

54.   As conceded by the Patent Owner during his appeal and in the patent, an average volume of about 175-450 cubic inches is equivalent to one standard bath towel. *See* Col. 2, lines 38-40.   Accordingly, a cavity sufficient for holding one standard bath towel discloses this limitation.

55.   Warren describes an approach for making a more pleasant flagrance for the towels. *See* Col. 3. Lines 50-55.   In the same technical field of dry heating textile materials, US Patent Publication No. 2002/0133969 to Casella discloses a cavity where a textile material is dry heated that is a cavity large enough to hold an article of clothing, which is larger than a standard towel and thus volume of about 175-450.   Casella discloses that a single lid (door) 86 dimensioned to seal the lower compartment 20 where clothing is so that air does not escape is mounted on front of the housing 12 and swings open on a hinge 88 [0051].   Casellas also is concerned with providing a drying apparatus that may be used as an air-fresheners [0027].   Casellas is also concerned with providing a drying apparatus that removes wrinkles from textile materials [0012].   It would have been obvious to one of ordinary skill in the art to have modified Warren (as modified per the combination of Governale, Maruca, Lovett, Cayley and DeMars) to make the cavity larger to hold an article of clothing (and thus have a total volume of at least about 175 cubic inches) and to have a single lid as taught in Casella for the purposes of providing a more pleasant fragrance for textile

27-014

materials and removing wrinkles.

| Claim | US Patent No. 8,481,895 Limitation | Casella |
|-------|-----------------------------------|---------|
| 43f | Single lid | Door 86 dimensioned to seal the lower compartment 20 where clothing is so that air does not escape is mounted on front of the housing 12 and swings open on a hinge 88 [0051]. |
| 43j | said warming cavity having a total volume of at least about 175 cubic inches | [0014] The working model size includes a housing that is dimensioned to be sixty inches tall, twenty-four inches wide and eleven inches deep. However, larger and smaller models based on the same process and design as the preferred embodiment have been tested and are likewise effective at solving the above mentioned problems inherent in the prior art. (specification)<br><br>[0019] The lower compartment is of a generally larger size than the upper compartment and is dimensioned to accept an article of clothing. (specification)<br><br>[0039] The lower compartment 20 is of a generally larger size than the upper compartment 22 and is dimensioned to accept the article of clothing 26. As shown in FIG. 1, the article of clothing 26 is a Shirt. However, it is recognized that the housing may be adapted to dry and de-wrinkle other articles of |

27-014

| | | clothing, or non-clothing items, Such as towels, sheets, blankets, or the like. In the preferred embodiment of the invention, (specification) |
|---|---|---|

56.  *Claim 43 of '895 Patent is unpatentable under 35 U.S.C. 103(a) as being obvious over Warren in view of Estes as described below.*

57.  Warren describes an approach for making a more pleasant flagrance for the towels. *See* Col. 3. Lines 50-55.  In the same technical field of dry heating textile materials, U.S. Patent No. 5,815,961 to Estes discloses a clothes treating apparatus that include a single lid (door) 16 is hingedly connected to the cabinet 12 for closing the anterior region 14 where a textile material is dry heated in the cabinet large enough to hold a hanging assembly 26.  *See* Col. 3, lines 18-20, 28-30 and 39.  The door 16 seals the interface with the cabinet 12.  The hanging assembly 26 is designed to support a shirt-like clothing (col. 5, lines 7-8), which is at least about 175 cubic inches. Estes also is concerned with deodorizing and removing wrinkles from clothing (col. 1, lines 9-10). It would have been obvious to one of ordinary skill in the art to have modified the cavity of Warren to be at least about 175 cubic inches to hold an article of clothing as taught in Estes for the purposes of deodorizing and removing wrinkles from textile materials and to include a single lid for sealing the cavity as taught by Estes.

| Claim | US Patent No. 8,481,895 Limitation | Estes |
|---|---|---|
| 43f | Single lid | a single lid (door) 16 is hingedly connected to the cabinet 12 for closing the anterior region 14 where a textile material is dry heated |
| 43j | said warming cavity having a total volume of at least about 175 cubic inches | Cabinet 12 form an anterior region 14. Col. 3, line 18.  Anterior region 14 includes a hanging assembly 26 is designed to support a shirt-like clothing (col. 5, lines 7-8), which is larger than a standard towel. assembly |

31

27-014

58.    *Claim 43 of '895 Patent is unpatentable under 35 U.S.C. 103(a) as being obvious over Warren in view of Murphy/640 as described below.*

59.    Warren describes an approach for heating towels.  *See* Col. 3. Lines 50-55.  In the same technical field of dry heating textile materials, U.S. Patent No. 5,606,640("Murphy/640") discloses a free standing (thus portable) cabinet for warming a towel 18 that includes a cover 2 hinged to the upper edge and an inner cavity for holding a towel support 9.  *See* Col. 3, lines 24-25, 36, 51.  According to Murphy/640, "a large bath towel can be warmed in a period of approximately three minutes."  Col. 2, lines 5-7, Col. 4, lines 1-2. It would have been obvious to one of ordinary skill in the art to have modified Warren (as modified per the combination of Governale, Maruca, Lovett, Cayley and DeMars) to include a single lid and make the cavity larger to hold a volume to hold at least one standard bath towel and thus a total volume of at least about 175 cubic inches as taught in Murphy/640 for the purposes of decreased warm timing.

| Claim | US Patent No. 8,481,895 Limitation | Murphy/640 |
|---|---|---|
| 43f | Single lid | a cover 2 hinged to the upper edge and an inner cavity for holding a towel support 9 |
| 43j | said warming cavity having a total volume of at least about 175 cubic inches | cabinet for warming a towel 18 that includes a cavity for holding a towel support 9.  *See* Col. 3, lines 24-25, 36, 51 |

60.    *Claim 43 of '895 Patent is unpatentable under 35 U.S.C. 103(a) as being obvious over Warren in view of Murphy/287 as described below.*

61.    Warren describes an approach for heating towels.  *See* Col. 3. Lines 50-55.  In the same technical field of dry heating textile materials, U.S. Patent No. 5,842,287("Murphy/287") discloses a towel warmer 18 that includes a cover 10 hinged to an upper edge and a warming chamber 8 for rack 12.  *See* Col. 2, lines 49-50 and 54-55.  Murphy/287 is concerned with a towel warmer that can warm a towel in a short amount of time.  *See* Col. 1, lines 6-8.  Murphy/287 describes heated air passing through channels 29 flows downward on the towel 16, so that both the inner and outer surfaces of the towel are heated.  *See* Col. 3, lines 30-34. It would have been

27-014

obvious to one of ordinary skill in the art to have modified Warren (as modified per the combination of Governale, Maruca, Lovett, Cayley and DeMars) to include a single lid and make the cavity larger to have a total volume of at least about 175 cubic inches as taught in Murphy/287 for the purposes of warming both sides of the towel and decreased warm timing.

62.     *Claim 43 of '895 Patent is unpatentable under 35 U.S.C. 103(a) as being obvious over Warren in view of Motsenbocker as described below.*

63.     Warren describes an approach for heating towels.  *See* Col. 3. Lines 50-55.  In the same technical field of dry heating textile materials, U.S. Patent No. 6,179,162 to Motsenbocker discloses a device 10 for warming towels that includes a towel warming chamber 14 for holding warm towels 26.  *See* Col. 2, lines 35-47.  Motsenbocker also discloses an extraction slit cover 58 removably secured over an extraction slit 24 to reduce the effects of evaporation.  *See* Col. 4, lines 58-60.  In an alternative embodiment shown in FIG. 4, Motsenbocker describes the chamber storing "folded towels 26" and a heating member 30 near the folded towels.  Motsenbocker states that "a variety of towel types, shapes and sizes can be used."  Col. 5, lines 38-40.  Motsenbocker is concerned with a towel warmer that can dispense towels "warm to the touch."  *See* Col. 1, line 52.  Motsenbocker also describes using the towel warmer for baby wipes. *See* Col. 5, line 7.   It would have been obvious to one of ordinary skill in the art to have modified Warren (as modified per the combination of Governale, Maruca, Lovett and DeMars) to include a single lid to reduce the effects of evaporation and to make the cavity larger to hold folded towels 26 (total volume of at least about 175 cubic inches) as taught in Motsenbocker for the purposes of dispensing towels warm to the touch.

## CONCLUSION

64.     For the reasons given above, reexamination of claims 1-2, 21 and 43 of US Patent No. 8,481,895 is respectfully requested.

65.     Authorization is hereby given to charge any unforeseen fees to Deposit Account Number 506466.

66.     The office is encouraged to contact the undersigned by telephone for any questions.


Respectfully submitted,

/Kerry Culpepper Reg. # 45,672/
October 6, 2023

27-014

Kerry S. Culpepper
Reg. No. 45,672

Culpepper IP, LLLC
75-170 Hualalai Road
Suite B204
Kailua-Kona, Hawaii 96740
Phone: 808-464-4047
Customer No. 124474

27-014

## CERTIFICATE OF SERVICE

I, Kerry S. Culpepper, hereby certify that on Oct. 6, 2023, I caused a true and accurate copy of the foregoing request for reexamination and supporting documents were served on Patent Owner at the follow address listed as Patent Owner's correspondence address in the patent file and Patent Owner's registered agent per Colorado Secretary of State records.

| | |
|---|---|
| <u>Via Priority Mail</u><br>FAY SHARPE LLP<br>1228 Euclid Avenue, 5th Floor<br>The Halle Building<br>Cleveland, OH 44115 | <u>Via Priority Mail</u><br>GLOBAL PROTON LLC<br>c/o SALIHU BABA ABDULLAHI<br>2574 Ingalls St<br>Edgewater, CO 80214, |

/Kerry Culpepper Reg. # 45,672/
October 6, 2023
Kerry S. Culpepper
Reg. No. 45,672
Culpepper IP, LLLC
75-170 Hualalai Road
Suite B204
Kailua-Kona, Hawaii 96740
Phone: 808-464-4047